```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
REAL SELLING GROUP LLC,

                Plaintiff,              MEMORANDUM AND ORDER

         - against -                    20 Civ. 1468 (NRB)

ESN GROUP, INC.,

                Defendant.

------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Real Selling Group LLC ("Real Selling") brought suit against defendant ESN Group, Inc. ("ESN") asserting claims of violations of the Lanham Act, violations under New York General Business Law § 349, tortious interference, and defamation arising from alleged false, misleading, and defamatory statements by ESN. ESN moved to dismiss the suit for lack of personal jurisdiction. Real Selling then moved to amend its complaint to add antitrust claims against ESN. For the following reasons, Real Selling's motion to amend is denied and ESN's motion to dismiss is granted.

### BACKGROUND

**1. Factual Allegations**

ESN is a California corporation, with its principal place of business in Carpintera, California, which manufactures skin care and other personal care products, including, as relevant here, products from its "Ceramedx" and "Earth Science" brands. Amended

Complaint, ECF No. 22 ("Am. Compl.") ¶¶ 2, 7; Declaration of Jay Kline in Support of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 17-4 ("Kline Decl.") ¶ 2.[1] Ceramedx is a line of skin-care products which sell for $10 to $18 on ESN's Ceramedx website,[2] and Earth Science is a line of skin, body and hair care products which sell for $5 to $25 on ESN's Earth Science website.[3] While ESN engages in limited direct sales of its products through its websites, the majority of its sales are through authorized distributors and resellers who contract with ESN to use copyrighted and trademarked materials in marketing ESN's brands. Kline Decl. ¶ 3.

Real Selling, a New York limited liability company with its principal place of business in New Hampton, New York, primarily resells products through Amazon.com[4] under the name XXVIIP. Am. Compl. ¶ 35. Among other things, it resells ESN's "Ceramedx" and "Earth Science" products. Id. ¶¶ 2, 6. Real Selling is an "unauthorized reseller" of ESN's products in that it has no contract with ESN to sell its brands. Kline Decl. ¶ 4-5.

---

[1] In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), a court may look to evidence outside the pleadings. See Sandoval v. Abaco Club on Winding Bay, 507 F. Supp. 2d 312, 315 (S.D.N.Y. 2007).

[2] Shop All Products, Ceramedx, www.ceramedx.com/collections/shop (last accessed Feb. 9, 2021).

[3] All Products, Earth Science, www.earthsciencebeauty.com/collections/all-products (last accessed Feb. 9, 2021).

[4] Amazon is domiciled in the State of Washington.

Real Selling alleges that on November 20, 2019, it was informed by Amazon that Amazon had received a complaint from ESN claiming that Real Selling was selling counterfeit Ceramedx products on its platform and that Amazon would remove the listing until Real Selling could provide proof of authenticity. Am. Compl. ¶ 13. Real Selling provided proof of authenticity and the product was relisted. Nevertheless, ESN filed a second and third complaint, each time causing Amazon to delist the Ceramedx product from Real Selling's platform before Real Selling could provide proof of authenticity. Id. ¶¶ 14-18. As a result of these series of complaints from ESN, and out of concerns that Amazon might take further action in suspending Real Selling's account, Real Selling has "stranded" its Ceramedx inventory, i.e., it has increased the price of the product well beyond its retail value, making the listing effectively invisible on Amazon. Id. ¶ 20.

According to Real Selling, ESN launched a similar complaint campaign against Real Selling's other listings of ESN products, including products under ESN's "Earth Science" trademark. Id. ¶¶ 21-23. In late January, ESN began purchasing its own products from Real Selling, posing as an ordinary customer without disclosing that it was the brand owner. Id. ¶¶ 31-32. It then allegedly returned the purchases and demanded a refund, claiming to Amazon that it had received counterfeit or damaged goods from Real Selling. Id. ¶ 32.

Real Selling contends that ESN's conduct was born out of a desire to "to charge supracompetitive prices, limit the scope of the availability of the resale of its products, and otherwise control the marketplace" by "shutting down resellers it does not favor who offer [ESN]'s products for sale at lower prices than those charged by [ESN]'s favored resellers." Id. ¶¶ 52-53. ESN, meanwhile, maintains that it has concerns that if it is unable to exercise control over the marketing of its brands, "unauthorized resellers" might make false or misleading claims about ESN's products or else continue to market ESN's products past their "best if used by" date. Kline Decl. ¶¶ 6-7.

**2. Procedural History and Real Selling's Amended Complaint**

Real Selling filed its original complaint against ESN on February 19, 2020 raising claims of false or misleading representations to Amazon and unfair competition under § 1125 of the Lanham Act, deceptive acts and practices under New York General Business Law § 349, tortious interference, and defamation and trade libel. ECF No. 1.

ESN then filed a letter requesting leave to make a motion to dismiss for lack of personal jurisdiction arguing that Real Selling's causes of action did not arise from ESN's business transactions in New York within the meaning of N.Y. C.P.L.R. § 302(a)(1) and that Real Selling could not support personal

jurisdiction under § 302(a)(3) as its claims sounded in defamation. ECF No. 12.  After a conference on June 16, 2020, the Court granted ESN leave to file its motion, which it did on August 7, 2020. After receiving two extensions to file its response to ESN's motion to dismiss, Real Selling instead filed an amended complaint on October 2, 2020.

The principal addition to the Amended Complaint was the inclusion of claims for maintaining monopoly power and attempted monopolization under § 2 of the Sherman Act.  Am. Compl. ¶¶ 45-61. The Amended Complaint added a handful of new factual allegations, including information on its "storefront" page, noting that the page includes the true company name behind the seller's Amazon name, and the New York address of the company. Id. ¶¶ 40.  The Amended Complaint also quotes from the declaration of Jay Kline – ESN's CEO – in support of ESN's motion to dismiss, which notes that "ESN only sells on Amazon through authorized resellers" – of which Real Selling is not one – and that ESN "has had to address the problem of 'unauthorized sellers' of its products.  Id. ¶¶ 47-49; Kline Decl. ¶¶ 4-7.

After Real Selling filed the Amended Complaint, ESN requested a conference and asked the Court to strike the Amended Complaint as untimely under Rule 15.  ECF No. 23.  Rather than have the parties litigate the timeliness issue, at a conference on October 22, 2020, the Court suggested that Real Selling move to amend its

-5-

complaint and simultaneously respond to ESN's pending motion to dismiss. ESN would then have an opportunity to object to the cross-motion to amend and reply in support of its motion to dismiss, and finally, Real Selling would have an opportunity to reply in support of its cross-motion to amend. This briefing was completed on January 8, 2021.

## LEGAL STANDARDS

The dueling motions of the parties raise two interrelated questions for the Court: (1) does the Court have personal jurisdiction over ESN? and (2) can Real Selling amend its complaint to include claims of monopolization under § 2 of the Sherman Act?

It is the plaintiff's burden to demonstrate that the Court has personal jurisdiction over the defendant. Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001). "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34-35 (2d Cir. 2010) (quoting Thomas v. Ashcroft, 470 F.3d 491, 495 (2d Cir. 2006)). "The lawful exercise of personal jurisdiction by a federal court requires satisfaction of three primary requirements": (1) the defendant must have been properly served, (2) the court must have a statutory basis for exercising personal jurisdiction, and (3) the exercise of personal jurisdictional must comport with constitutional due process principles. Licci ex rel.

Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 59-60 (2d Cir. 2012).

Federal Rule of Civil Procedure 15(a)(2) provides that a court "should freely give leave [to amend pleadings] when justice so requires." Whether to grant leave, however, is ultimately "within the sound discretion of the district court," and a district court may "deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007).

Here, ESN opposes the proposed amendments to add the monopolization claims under § 2 of the Sherman Act solely on the ground of futility. The Court's inquiry into the futility of proposed amendments parallels the analysis on a motion to dismiss pursuant to the Federal Rule of Civil Procedure 12(b)(6). Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002). Therefore, the Court "accept[s] as true all factual allegations in the [proposed amended] complaint and draw[s] all reasonable inferences in favor of the non-moving party." City of Providence v. BATS Glob. Mkts., Inc., 878 F.3d 36, 48 (2d Cir. 2017). If the proposed Amended Complaint does not proffer "enough facts to state a claim for relief that is plausible on its face," a motion for leave to amend may be denied. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). In conducting this inquiry, the Court need not assume as true allegations that

are conclusory.  Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020).

## DISCUSSION

**1. Real Selling's Antitrust Claims**

Because Real Selling's arguments in response to ESN's motion to dismiss for lack of personal jurisdiction rely in large part on its proposed amendments adding antitrust claims to its complaint, the Court first addresses whether Real Selling's motion for leave to file its proposed amended complaint should be granted.  Real Selling argues that it has properly pled monopolization claims against ESN by alleging a scheme to "force[] all competitors out of the market for selling goods manufactured by the Defendant by repeatedly accusing them of illegal conduct and by establishing a network of 'authorized resellers.'"  ECF No. 28 at 11.  ESN asserts that the amendments are futile and that the monopolization claims fail as a matter of law because (1) ESN's contracts with authorized resellers to exclusively resell ESN products do not run afoul of the antitrust laws, and (2) Real Selling has not and cannot define a cognizable relevant market.

To establish a claim for monopolization, plaintiff must show "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident."

PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir.2002) (per curiam) (quoting United States v. Grinnell Corp., 384 U.S. 563, 570-71 (1966)).  Monopoly power is "the power to control prices or exclude competition," id. at 107 (quoting United States v. E.I. du Pont de Nemours & Co., 351 U.S. 377, 391 (1956)), and is also referred to as a high degree of "market power."  See Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 97 (2d Cir.1998). To succeed on its claim, Real Selling must show that defendant has "engaged in improper conduct that has or is likely to have the effect of controlling prices or excluding competition, thus creating or maintaining market power."  PepsiCo, 315 F.3d at 108. To recover for attempted monopolization, plaintiff must establish "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power."  Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 456 (1993).

Real Selling acknowledges that "[a] manufacturer has a natural monopoly in the sale and distribution of its own products." Re-Alco Indus., Inc. v. Nat'l Ctr. for Health Educ., Inc., 812 F. Supp. 387, 392 (S.D.N.Y. 1993).  Nonetheless, it argues that ESN impermissibly attempted to monopolize the resale market of its products.  This argument fails because the resale market of ESN-manufactured products is not a cognizable relevant market under

the antitrust laws.[5]

"The relevant market is defined as all products 'reasonably interchangeable by consumers for the same purposes,' because the ability of consumers to switch to a substitute restrains a firm's ability to raise prices above the competitive level." Geneva Pharm. Tech. Corp. v. Barr Labs. Inc., 386 F.3d 485, 496 (2d Cir. 2004) (quoting E.I. du Pont de Nemours & Co., 351 U.S. at 395 (1956)). Real Selling doesn't even attempt to argue that the resale market of ESN-manufactured products contains all products that are reasonably interchangeable by consumers, and it would fail if it had given the vast array of relatively low-priced skin and personal care products in the market. This alone would warrant dismissal of the monopoly claims. See Chapman v. New York State Div. for Youth, 546 F.3d 230, 238 (2d Cir. 2008) (quoting Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 436 (3d Cir. 1997) ("[W]here the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual

---

[5] See Fiore v. McDonald's Corp., No. 96 Civ. 0376, 1996 WL 331090, at *7 (E.D.N.Y. June 12, 1996) ("The only relevant market the plaintiffs have alleged in their complaint is the resale market for McDonald's franchised restaurants. Plaintiffs have failed to sufficiently allege a relevant market that is required to make out a claim under Section Two of the Sherman Act.").

inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted.").

More centrally, "[c]ourts in the Second Circuit generally reject efforts to define a market as consisting of a single brand, and will dismiss a complaint that alleges only such a market." Bel Canto Design, Ltd. v. MSS HiFi, Inc., No. 11 Civ. 6353 CM, 2012 WL 2376466, at *10 (S.D.N.Y. June 20, 2012); see also Commercial Data Servers, Inc. v. Int'l Bus. Machines Corp., 262 F. Supp. 2d 50, 66 (S.D.N.Y. 2003) (listing cases recognizing the same principle).[6] This is so because of the "established maxim that antitrust law protects competition, not competitors." Id. But ESN has no anticompetitive incentive to reduce the number of entities reselling its products. The Second Circuit in E & L Consulting, Ltd. v. Doman Indus. Ltd. put a fine point on it:

> The power to restrict output to maximize profit is complete in the manufacturing monopoly, and there is no additional monopoly profit to be made by creating a monopoly in the retail distribution of the product. . . . On the contrary, a firm with a monopoly at the retail distribution level will further reduce output to maximize its profits, thereby

---

[6] The one case which Real Selling raises to suggest that monopolization claims may succeed where the plaintiff alleged a single-product market – a 55-year-old patent case - is entirely inapposite. That case involved a question of whether a manufacturer's enforcement of an invalid patent could provide the basis for an attempted monopolization counterclaim. The counterclaimant was not trying to resell the first manufacturer's own product but was instead trying to produce its own version. See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172 (1965). The anticompetitive harm of asserting an invalid patent to stifle production of alternatives in the market has clear antitrust implications whereas here, the reselling of a single brand's product does not.

>     reducing the sales and profit of the monopoly
>     manufacturer.

472 F.3d 23, 30 (2d Cir. 2006). This reasoning explains why Real Selling's argument that ESN is impermissibly monopolizing the resale market of its brand is inconsistent with the principle that exclusive distributorship agreements are presumptively legal.

Real Selling's theory of anticompetitive injury – that ESN's alleged conduct "allowed [it] to charge supracompetitive prices [and] limit the availability of the resale of its products," Am. Compl. ¶ 52, is therefore fundamentally flawed. That conduct, even if true, would not have an effect on the pricing and availability of ESN's products beyond what ESN can accomplish through its natural manufacturing monopoly of those products and ability to exclusively contract with preferred retailers. Because Real Selling fails to identify a cognizable relevant market and fails to state an antitrust harm resulting from ESN's alleged conduct, its motion to amend its complaint to include Sherman Act § 2 claims must be denied.[7]

---

[7] Real Selling asks for an additional opportunity to amend the complaint if the Court were to find its antitrust claims deficient. There is no reason to allow it to do so here because Real Selling's theory of the case simply does not raise antitrust concerns and additional factfinding would not rectify the defect in its pleadings. See Todd v. Exxon Corp., 275 F.3d 191, 200 (2d Cir. 2001) ("Cases in which dismissal on the pleadings is appropriate frequently involve either (1) failed attempts to limit a product market to a single brand, franchise, institution, or comparable entity that competes with potential substitutes or (2) failure even to attempt a plausible explanation as to why a market should be limited in a particular way.").

**2. Personal Jurisdiction Over the Remaining Claims**

We next address whether Real Selling's remaining claims can survive ESN's motion to dismiss for lack of jurisdiction given the dismissal of the antitrust claims. Real Selling cites § 302(a)(1) and § 302(a)(3) as the two statutory bases upon which this Court might exercise personal jurisdiction over ESN. We consider each provision in turn.

New York's long-arm statute permits courts to reach a foreign defendant "who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). "To establish personal jurisdiction under this provision, the plaintiff must demonstrate that the defendant engaged in a purposeful business transaction in or directed to New York and that such contacts with the state had a 'substantial relationship' to the claim asserted in the underlying litigation." Pearson Educ., Inc. v. Shi, 525 F. Supp. 2d 551, 555 (S.D.N.Y. 2007). "A defendant need not physically enter New York State in order to transact business, 'so long as the defendant's activities here were purposeful.'" Licci, 673 F.3d at 61 (quoting Fischbarg v. Doucet, 9 N.Y.3d 375, 380, (2007)). While "[a] single contact is sufficient to show that a defendant 'transacted business' within the meaning of C.P.L.R. 302(a)(1)," Packer v. TDI Sys., Inc., 959 F. Supp. 192, 199 (S.D.N.Y. 1997) (citing Kreutter v. McFadden Oil Corp., 71 N.Y.2d

460, 467 (1988)), "[i]n the end, 'whether a defendant has purposefully availed itself of the New York forum is a fact-intensive inquiry inasmuch as it requires the trial court, in the first instance, to "closely examine the defendant's contacts for their quality."'" Gordian Grp., LLC v. Syringa Expl., Inc., 168 F. Supp. 3d 575, 584 (S.D.N.Y. 2016) (quoting Licci, 732 F.3d at 168 (2d Cir. 2013)).

Real Selling offers two bases for the Court to exercise personal jurisdiction under § 302(a)(1):  (1) ESN's sales of its products to New York customers through websites that it operates (Kline Decl. ¶ 9), and (2) ESN's purchases and returns from Real Selling's Amazon platform while falsely claiming to Amazon that they were damaged or otherwise unacceptable.  Am Compl. ¶¶ 31-33.

ESN's in-state sales through its websites are clearly insufficient for the exercise of personal jurisdiction, as Real Selling's claims do not arise from these sales.  "New York courts have held that a claim 'arises from' a particular transaction when there is some articulable nexus between the business transacted and the cause of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted." Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006) (internal quotations and citations omitted). Here, Real Selling's claims arise out of alleged complaints made by ESN to Amazon (located in Washington) concerning Real Selling's

-14-

own sales activities.  ESN's sales in New York have nothing to do with these claims.  See G31000 N. Am., Inc. v. Paris, No. 14 Civ. 3885, 2014 WL 6604790, at *3 (S.D.N.Y. Nov. 21, 2014).

Real Selling cites to Bah v. Apple Inc. to suggest that defamatory statements made to protect and advance defendant's New York commercial activities can form the nexus between plaintiff's claims and defendant's business transactions.  No. 19 Civ. 3539 (PKC), 2020 WL 614932 (S.D.N.Y. Feb. 10, 2020).  However, Bah is entirely distinguishable.  There, defendant directed allegedly false statements to its New York employees and the N.Y.P.D. in order to protect its New York stores from a perceived shoplifter. The court found that personal jurisdiction over defendant was proper under  § 302(a)(1) because defamatory statements were "made in New York, directed to a specific New York audience, the NYPD, and intended to have a specific effect within New York, the initiation of legal process against [plaintiff] in New York."  Id. at *5.

To the extent that the purpose of ESN's conduct as alleged in Real Selling's complaint was to protect ESN's business interest, that interest was not limited to New York, but instead extended to anywhere - presumably the entire country - where Real Selling could offer ESN's products.  Further, unlike in Bah, ESN's statements were made from its headquarters in California and directed to a

-15-

Washington State audience – namely, Amazon.  Bah is simply inapposite.[8]

Next, Real Selling argues that ESN's alleged purchases from Real Selling's Amazon platform provide a basis for the Court to exercise personal jurisdiction over ESN.  While these transactions might be substantially related to Real Selling's claims, Real Selling has failed to establish that ESN "purposefully availed itself of the New York forum."  Licci, 732 F.3d at 168.  The facts of this case are virtually identical to Careful Shopper, LLC v. TP-Link USA Corp., where plaintiff alleged that defendant made purchases from plaintiff's Amazon platform and then lodged false complaints with Amazon.  No. 18 Civ. 3019, (E.D.N.Y. Sept. 30, 2019).  The court dismissed for lack of personal jurisdiction because "[p]laintiff has presented no evidence that when [defendant] bought products from [plaintiff]'s store front on

---

[8]   Real Selling also argues that because its claims arise from ESN's anticompetitive conduct, its sales in New York are in fact "inextricably tie[d]" to Real Selling's claims.  ECF No. 28 at 4.  The logic of the theory isn't readily apparent but appears to be that because ESN's conduct was driven by a desire to remove Real Selling from competition in New York, its sales in New York would directly benefit from its actions, thus providing the requisite nexus between ESN's New York business activities and Real Selling's claims.  For the reasons stated above, Real Selling does not allege cognizable anticompetitive conduct.  In any event, Real Selling provides no support for this theory of personal jurisdiction in the case law, and likewise fails to explain why ESN's business in New York would benefit in particular by removing Real Selling from competition.  Both companies, after all, sell their products online and are thus able to reach a national audience without regard for geography.  Real Selling's theory, if accepted, would extend personal jurisdiction over any defendant facing claims of anticompetitive conduct where both defendant and plaintiff conduct any business, however minor, in New York.  That clearly is not the law.

Amazon.com, he had any knowledge that he was purchasing goods from a New York-based company." Id. at 6.

Real Selling attempts to distinguish Careful Shopper by noting that the amended complaint describes how its "Amazon storefront" (under the trade name of "XXVIIP") provides Real Selling's official business name and New York address. But customers need not ever click to Real Selling's storefront page to make purchases from Real Selling. Moreover, the sworn declaration of ESN's CEO stating that "[u]ntil learning of the filing of this lawsuit, ESN had no records or knowledge of an entity named Real Selling Group, LLC., or any variant of that name," makes plain that ESN had not viewed the storefront page. Kline Decl. ¶ 10. Nor would it have had any obvious reason to do so. The situation is analogous to a customer stepping into a store located in a foreign state, unaware that the store's headquarters is in New York. Without providing or even alleging any evidence that ESN knew it was engaging with a New York company when it made its online transactions, Real Selling fails to establish that ESN "purposefully avail[ed] itself of the privilege of conducting activities within" New York. S.E.C. v. Alexander, 160 F. Supp. 2d 642, 656 (S.D.N.Y. 2001).[9]

---

[9] Real Selling makes a last-ditch effort to seek jurisdictional discovery if the Court does not accept its arguments. ECF No. 24 at 8. However, it has been on notice of ESN's pending motion to dismiss since at least May 14, 2020 (ECF No. 12) and the time to raise discovery demands would have been early in

Finally, Real Selling offers N.Y. C.P.L.R. § 302(a)(3) as a basis for the Court to exercise personal jurisdiction over ESN. Section 302(a)(3) provides a basis for personal jurisdiction where defendant "commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation." N.Y. C.P.L.R. § 302(a)(3) (emphasis added). "Although [p]laintiffs have nominally alleged torts other than defamation, '[p]laintiffs may not evade the statutory exception by recasting their cause of action as something other than defamation.' Claims that 'sound[] in defamation' are also excluded from" section 302(a)(3). G31000 N. Am., Inc., 2014 WL 6604790, at *2 (quoting Cantor Fitzgerald, L.P., v. Peaslee, 88 F.3d 152, 157 (2d Cir. 1996)). Real Selling's remaining claims clearly sound in defamation as each arises out of ESN's allegedly false complaints to Amazon. See Am. Compl. ¶ 65 (citing ESN's "false misleading, and defamatory statements" as the basis of Lanham Act § 1125(a) claim); id. ¶ 71 (citing ESN's "false misleading, and defamatory statements" as the basis for its N.Y.

---

the six months between that notice and its response to the motion, including at two conferences that the Court held concerning the motion. In fact, confronting ESN's motion to dismiss for lack of personal jurisdiction, Real Selling proposed to amend its complaint, but rather than amending to allege sufficient contacts between ESN and the forum state, Real Selling instead merely changed its legal theory of the case, offering virtually no additional factual allegations to support jurisdiction. Real Selling simply does not get a second bite at the apple. In any event, the Court is somewhat puzzled by Real Selling's repeated interest in amending its pleadings at some considerable expense rather than simply refile its case in a court having appropriate jurisdiction.

Gen Bus. Law § 349 claim); id. ¶ 77 (citing ESN's "false trademark infringement, counterfeiting, and damaged goods reports with Amazon" as the basis for its tortious interference claim).

Real Selling's only argument in response is that its antitrust claims do not sound in defamation. As the Court has rejected its proposed amendment to add antitrust claims, this argument is unavailing. Having rejected § 302(a)(1), the remaining original claims sound in defamation and thus Real Selling may not rely on § 302(a)(3) to exercise personal jurisdiction over ESN.

Because there is no other statutory basis for this Court's exercise of personal jurisdiction over ESN, Real Selling's amended complaint must be dismissed without prejudice to its refiling in an appropriate forum.

## CONCLUSION

For the foregoing reasons, ESN's motion to dismiss for lack of personal jurisdiction is GRANTED and Real Selling's cross-motion to amend is DENIED. The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 17 and to close the case.

**SO ORDERED.**

Dated:   New York, New York
         February 12, 2021

                                    _____
                                         NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE